J-S12001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| JOVON DATON JONES | |
| Appellant | No. 1339 MDA 2016 |

Appeal from the PCRA Order July 12, 2016
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0005974-2011

BEFORE: PANELLA, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J. **FILED MARCH 10, 2017**

Appellant, Jovon Jones, appeals from the order dismissing his second petition pursuant to the Post Conviction Relief Act ("PCRA") as untimely. Additionally, Jones's counsel, Heather A. Reiner, Esq., has filed a petition to withdraw. We affirm the order denying Jones post-conviction relief and grant counsel leave to withdraw.

A prior panel of this Court set forth the following factual history of this case while addressing Jones's appeal from the denial of his first PCRA petition:

> The underlying facts of this matter involve the killing of Alesia Martin, whose body was discovered in her home on May 16, 2011. Appellant lived in a row home next door to the victim. Family members became concerned when they were unable to contact Ms. Martin. One of her family members, Bryce Bennett, entered into her home by going through a crawl space between Appellant's attic and the victim's residence. Appellant allowed

Mr. Bennett to use the crawl space but did not accompany him. Mr. Bennett found the victim in a state of undress in her bedroom with blood on the walls. Her bed had been stripped of the bedding and a large bloodstain was on the bed. Mr. Bennett opened the front door and telephoned 911 with Appellant's cell phone but was too distraught to speak.

Appellant volunteered for an interview with police on May 18, 2011. Appellant initially indicated that, after Mr. Bennett opened the door to the victim's home, Appellant went upstairs into the victim's room. According to him, the 911 dispatcher asked him to touch the body and see if it was cold. However, two other family members of the victim who were at the house when the body was discovered contacted police after seeing Appellant provide media outlets with graphic descriptions of the scene. These family members insisted that Appellant had not entered the victim's bedroom. Mr. Bennett also confirmed that Appellant had not gone into the bedroom, as did several other witnesses who had been present.

Based on this information, police secured a search warrant for Appellant's home, and requested Appellant to come in for a second interview. Appellant did volunteer to be interviewed and he was given *Miranda* warnings. The interview was both audio and video recorded. Police interviewed Appellant from 10:51 p.m. until 5:31 a.m., with various breaks in between. Ultimately, Appellant admitted to stealing the victim's cell phone and implicated himself in the killing. Police then arrested Appellant. After a preliminary hearing, Appellant's charges were amended to include first-degree murder, third-degree murder, burglary, theft by unlawful taking, abuse of a corpse, tampering with evidence, and unsworn falsification.

Appellant litigated a suppression motion and proceeded to trial. The Commonwealth and defense counsel agreed that portions of Appellant's May 19-20 video interview would be redacted. Defense counsel notified the prosecution via email of the portions of the video he believed should be redacted. The parties agreed that a portion of the video that referenced other burglary allegations would not be played for the jury. However, during the trial, the Commonwealth played that section before stopping the video. The section of the video where Appellant admitted to being inside the house had not yet been played. Defense counsel requested a mistrial, which the trial court granted.

Following the mistrial, the Commonwealth obtained additional DNA evidence implicating Appellant. The parties entered into plea negotiations. The Commonwealth sought a plea to third-degree murder and the other charges in exchange for a twenty-five to fifty year sentence. Although represented by counsel, Appellant filed with the court a *pro se* motion to dismiss based on double jeopardy grounds. Defense counsel received that motion but did not pursue it. Thereafter, Appellant entered a *nolo contendere* plea to third-degree murder, theft by unlawful taking, abuse of a corpse, tampering with evidence, and unsworn falsification in exchange for a sentence of twenty-five to fifty years. The court imposed sentence on May 6, 2014.

Appellant, acting *pro se*, wrote to the court complaining of counsel's representation and requested new counsel. That motion was docketed May 21, 2014. A similar motion was docketed on June 4, 2014. However, prior to that, the court, on May 30, 2014, appointed new counsel. Counsel did not file a direct appeal but submitted a petition for post-conviction relief. Therein, Appellant asserted that counsel rendered ineffective assistance by not moving to dismiss the charges on double jeopardy grounds, which improperly induced him to enter the guilty plea. The PCRA court conducted an evidentiary hearing on July 14, 2014.

*Commonwealth v. Jones*, No. 1315 MDA 2014, at 1-4 (Pa. Super., filed 6/5/15) (unpublished memorandum). The PCRA court denied Jones relief on his petition, and this Court affirmed that decision. The Supreme Court of Pennsylvania denied Jones's petition for allowance of appeal on December 31, 2015. *See Commonwealth v. Jones*, 130 A.3d 1288 (Table).

On May 23, 2016, Jones filed the instant PCRA petition *pro se*, asserting that the search warrant of his home had been secured by police through the use of knowingly false testimony. Thereafter, the PCRA court notified Jones of its intent to dismiss the petition as untimely, to which Jones

filed a handwritten response detailing his medical history in jail. The PCRA court proceeded to dismiss the petition as untimely, and Jones filed this timely *pro se* appeal. The PCRA court subsequently appointed counsel to represent Jones during this appeal.

In lieu of an advocate's brief, Attorney Reiner has filed a **Turner**/**Finley** no-merit letter. Thus, we must assess counsel's assertion that the issue Jones wishes to raise has no merit pursuant to the following standards.

> The **Turner**/**Finley** decisions provide the manner for post[-]conviction counsel to withdraw from representation. The holdings of those cases mandate an independent review of the record by competent counsel before a PCRA court or [an] appellate court can authorize an attorney's withdrawal. The necessary independent review requires counsel to file a "no-merit" letter detailing the nature and extent of his [or her] review and list each issue the petitioner wishes to have examined, explaining why those issues are meritless. The PCRA court, or an appellate court if the no-merit letter is filed before it, **see Turner**, **supra**, then must conduct its own independent evaluation of the record and agree with counsel that the petition is without merit[.]
>
> [T]his Court [has] imposed additional requirements on counsel that closely track the procedure for withdrawing on direct appeal. . . . [C]ounsel is required to contemporaneously serve upon his [or her] client his [or her] no merit letter and application to withdraw along with a statement that if the court granted counsel's withdrawal request, the client may proceed *pro se* or with a privately retained attorney[.]

**Commonwealth v. Reed**, 107 A.3d 137, 140 (Pa. Super. 2014) (citation omitted). Attorney Reiner has served Jones with a copy of her no-merit letter, and the letter informs Jones of his right to retain private counsel or proceed *pro se*, and that he did not need to wait for this Court to rule on

counsel's petition to act. Jones has not filed a response. We therefore turn to the merits of the issue Jones wishes to raise on appeal.

Jones contends that the PCRA court erred in dismissing his petition. Jones's counsel believes that the PCRA court correctly determined that it did not have jurisdiction over the instant PCRA petition. *See Turner/Finley* Letter Brief, at 6-8.[1] We review challenges to an order dismissing a petition under the PCRA to determine whether the order is supported by the evidence of record and is free of legal error. *See Commonwealth v. Halley*, 870 A.2d 795, 799 n.2 (Pa. 2005). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *See Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa. Super. 2001).

Because this is Jones's second petition for post-conviction relief, he must meet a more stringent standard. "A second or any subsequent post-conviction request for relief will not be entertained unless a strong *prima facie* showing is offered to demonstrate that a miscarriage of justice may have occurred." *Commonwealth v. Burkhardt*, 833 A.2d 233, 236 (Pa. Super. 2003) (*en banc*) (citations and internal quotation marks omitted). "A

---

[1] Jones's counsel also agrees with the PCRA court that the issue raised by Jones in this petition, the validity of the search warrant authorizing a search of his home, was previously litigated and waived. *See Turner/Finley* Letter Brief, at 8-10. Given that we agree that the PCRA court lacked jurisdiction over Jones's petition, we need not reach these issues.

petitioner makes a *prima facie* showing if he demonstrates that either the proceedings which resulted in his conviction were so unfair that a miscarriage of justice occurred which no civilized society could tolerate, or that he was innocent of the crimes for which he was charged." ***Id***. (citations and internal quotation marks omitted).

The timeliness of a post-conviction petition is jurisdictional. ***See Commonwealth v. Hernandez***, 79 A.3d 649, 651 (Pa. Super. 2013). Generally, a petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment is final, ***see*** 42 Pa.C.S.A. § 9545(b)(1), unless the petition alleges, and the petitioner proves, that an exception to the timeliness requirement exists, ***see*** 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii).

Jones's judgment of sentence became final on June 5, 2014, when the thirty-day period for filing a direct appeal to this Court expired. ***See*** 42 Pa.C.S.A. § 9545(b)(3). Thus, Jones had until June 5, 2015, to file a timely PCRA petition. As Jones filed the instant petition in May 2016, it is patently untimely unless he has satisfied his burden of pleading and proving that one of the enumerated exceptions applies.

Jones did not plead any exceptions to the time bar in his petition. In his response to the PCRA court's notice of intent to dismiss, Jones asserts that he was hospitalized for physical and emotional reasons while in jail, and this prevented him from filing this petition earlier. However, he did not make

any attempt to link these facts to any of the statutory exceptions. Most likely this is because none of the exceptions can be satisfied by his allegations.

The only exception that could arguably apply to Jones's allegations is the governmental interference exception. *See* 42 Pa.C.S.A. §9545(b)(1)(i). In order for Jones to obtain relief from the PCRA's time bar based upon government interference, he must plead that the "failure to raise the claim [or claims] previously was the result of interference by government officials with the presentation of the claim [or claims] in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States." *Id*. Jones makes no allegation that any prison or hospital official interfered with his ability to present his claims in a timely manner. We therefore agree with counsel's assessment that the PCRA court lacked jurisdiction over Jones's petition.

Order affirmed. Petition to withdraw granted. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/10/2017